UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

00 APR 28 PM 12: 19

U.S. DISTRICT COURT
N.D. OF ALABAMA

THERESS A. SMITH,              )
                               )
        Appellant,             )
                               )
vs.                            )    Civil Action No. CV-99-S-1829-S
                               )
WILLIE LOUIS SMITH, JR.,       )
                               )
        Appellee.              )

ENTERED

APR 2 8 2000

### MEMORANDUM OPINION

Theress A. Smith appeals confirmation of the Chapter 13
bankruptcy plan of Willie Louis Smith, Jr. by the United States
Bankruptcy Court for the Northern District of Alabama.[1]  Appellant
additionally contends the Bankruptcy Court erred in denying her
full relief from the automatic stay imposed under 11 U.S.C. §
362(a).  This court possesses jurisdiction over the appeal pursuant
to 28 U.S.C. § 158(a).  Upon consideration of appellant's arguments
and the designated record for appeal, this court concludes the
decision of the bankruptcy court is due to be affirmed.

### I. STANDARD OF REVIEW

A federal district court assumes the role of an appellate

---

[1] *See* Order entered on May 13, 1999, in *In re Willie Louis Smith, Jr.*, Case
No. 98-6516-TBB-13 (Bankr. N.D. Ala.), attached as Exhibit 16 to appellant's
amended designation of record on appeal (Doc. No. 3).  Implicitly, appellant
contends the bankruptcy court should have sustained her objections to
confirmation.  Throughout this opinion, this court will limit its analysis to
whether the bankruptcy court's confirmation of appellee's Chapter 13 plan was
proper.

5

court in reviewing the decision of a bankruptcy court. *See* 28 U.S.C. § 158(a). A bankruptcy court's findings of fact shall be upheld on appeal unless deemed clearly erroneous. *See* Bankr. R. 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647, 651 (11th Cir. 1986). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on entire evidence is left with the definite and firm conviction that a mistake has been committed." *Southerland v. Milam*, 187 B.R. 740, 741 (M.D. Fla. 1995) (citing *United States v. U.S. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Further, "[a]ppellants are entitled to an independent, *de novo* review of all conclusions of law and the legal significance accorded to the facts." *Southerland*, 187 B.R. at 741 (citing *In re Owen*, 86 B.R. 691, 693 (M.D. Fla. 1988), *reversed on other grounds in Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)).

## II. FACTUAL BACKGROUND

Appellant, Theress A. Smith, is the former spouse of appellee, Willie Louis Smith, Jr. As part of their divorce decree, Willie Smith was required to make monthly child support payments to Theress Smith. Once Willie Smith became delinquent in those payments, Theress Smith filed suit in the domestic relations court

for Jefferson County, Alabama.   That court made the following findings in an order entered on October 1, 1998:

> THIS CAUSE came on for hearing on September 22, 1998 on [the] Verified Petition for Rule Nisi and Petition to Modify [filed by Theress A. Smith].   Upon consideration thereof, together with stipulation of counsel, The Court is of the opinion the following ORDER should be entered. Accordingly, it is

> **ORDERED AND ADJUDGED BY THE COURT:**

> 1.   That the Defendant [Willie Louis Smith, Jr.] has failed to pay to the Plaintiff for child support at the rate of Five Hundred ($500.00) Dollars a month as ORDERED by the Court on January 31, 1993;

> 2.   The Court further finds that the Defendant is due certain credits for money expended on behalf of the minor child while the child was not living with the mother;

> 3.   The Court finds that the total figure due Plaintiff for child support is Ten Thousand Five Hundred ($10,500.00) Dollars.

> 4.   The Court further finds that a Reasonable Attorney's Fee for Plaintiff's Attorney is Fifteen Hundred ($1,500.00) Dollars.

> 5.   The Court therefore renders judgment against the Defendant for Twelve Thousand ($12,000.00) Dollars;

> 6.   That the Defendant can purge himself of contempt by paying the Twelve Thousand ($12,000.00) Dollars in the following manner:

> A.   Six Thousand ($6,000.00) Dollars on October 1, 1998;

> B.   Three Thousand ($3,000.00) Dollars on November 1, 1998;

3

     C.   Three Thousand ($3,000.00) Dollars on December 1, 1998.[2]

On October 2, 1998, the day following the domestic relations court's order of judgment, Willie Smith filed a voluntary petition for Chapter 13 bankruptcy, which listed only Theress Smith and her attorney as creditors.[3]

### III. PROCEEDINGS BEFORE THE BANKRUPTCY COURT

Willie Smith's initial petition and proposed Chapter 13 plan went through significant modifications before the bankruptcy court; a number of additional creditors eventually were included, and the total debt figure increased almost three-fold.[4]

Theress Smith contested Willie Smith's bankruptcy proceedings on three different grounds. First, she argued that Willie Smith had filed for bankruptcy in bad faith. The timing of the judgment of the domestic relations court and Willie Smith's bankruptcy filing constituted evidence of that point, according to Theress Smith. Moreover, Willie Smith's initial filing only included

---

[2] Exhibit 1 to request for relief from stay (emphasis in original), attached as Exhibit 3 to appellant's amended designation of record on appeal.

[3] *See* Exhibit 1 to appellant's amended designation of record on appeal.

[4] As stated *supra*, Willie Smith's initial petition and Chapter 13 plan, filed in October of 1998, provided that he needed relief from the demands of the $12,000 judgment ordered by the domestic relations court. By the time Willie Smith's ultimate Chapter 13 plan was confirmed, in May of 1999, four additional creditors had been added (State of Alabama Revenue Department, Birmingham Police Credit Union, Marks Fitzgerald, and Birmingham Police Retirement Fund), and the total debt was in the neighborhood of $30,000.

Theress Smith and her attorney as creditors, while omitting a number of others.  The bankruptcy judge implicitly rejected the bad faith argument by ultimately confirming Willie Smith's Chapter 13 plan.

Second, Theress Smith argued she should be granted full relief from the automatic stay created as a result of Willie Smith's bankruptcy filing, in order to enforce the back child support judgment in domestic relations court.[5]  She cited two exceptions to the stay provision in support of her argument.  The first, located at 11 U.S.C. § 362(b)(2)(B), provides that the filing of a bankruptcy petition does not automatically stay "the collection of alimony, maintenance, or support from property that is not the property of the estate."  The second, located at 11 U.S.C. § 362(d)(1), states that a bankruptcy court may terminate, annul, modify, or condition such a stay "for cause, including the lack of adequate protection of an interest in property of such party in

---

[5] Filing for bankruptcy under Chapter 13 operates as a stay, applicable to all entities, of——

    (1) the commencement or continuation, including the issuance
    or employment of process, of a judicial, administrative, or other
    action or proceeding against the debtor that was or could have been
    commenced before the commencement of the case under this title, or
    to recover a claim against the debtor that arose before the
    commencement of the case under this title ....

11 U.S.C. § 362(a).

interest."

The bankruptcy court refused to grant Theress Smith full relief from the automatic stay.  Instead, the bankruptcy court permitted Theress Smith to subpoena a number of Willie Smith's past tax returns, for the purpose of ascertaining whether he had received a refund.  This narrow relief from the stay was not fruitful, because Willie Smith had not received any refunds.  The bankruptcy court also offered Theress Smith relief from the stay to explore whether she could compel Willie Smith, under Alabama law, to borrow against amounts accrued in a pension fund related to his employment as a police officer for the City of Birmingham, Alabama;[6] she did not pursue that avenue of relief from the stay, however.

The bankruptcy court denied Theress Smith full relief from the automatic stay on the ground that it was not practical.  The court noted that if full relief was granted, a criminal contempt proceeding likely would be initiated in the domestic relations court relating to Willie Smith's failure to adhere to the strictures of the order entered on October 1, 1998.  If Theress

---

[6] The record indicates that Willie Smith had already borrowed against the pension fund on a prior occasion.  The Birmingham Police Fund is due, as a creditor, the amount of $6,454.66 for a loan taken out by Willie Smith against his retirement fund, according to the Chapter 13 plan ultimately confirmed by the bankruptcy court.

Smith initiated such a proceeding, the bankruptcy court noted that Willie Smith may very well receive jail time.  If Willie Smith was sentenced to a term of imprisonment, the bankruptcy court further predicted that he would be discharged from his employment.  Without employment, Willie Smith's responsibilities to his creditors, as delineated in the Chapter 13 plan, would not be satisfied.

Theress Smith contended that Willie Smith would avoid jail time by borrowing against his pension fund to satisfy the back child support obligations.  The bankruptcy court recognized that point, but nonetheless concluded that relief from the stay was improper.  The court found that Willie Smith's Chapter 13 plan involved a number of creditors in addition to Theress Smith and her attorney.  Should Willie Smith exhaust his resources in an effort to comply with the judgment entered against him in domestic relations court, the other creditors would not be satisfied.  Ultimately, the bankruptcy court concluded that Willie Smith's discharge of debts through bankruptcy was inevitable, and that Theress Smith should be compensated in a manner similar to that of other creditors.[7]

As confirmed, Willie Smith's Chapter 13 plan provided for

---

[7] That discussion between the bankruptcy court and Theress Smith's attorney can be found on audiotape II of the hearing conducted on May 11, 1999.  *See* Exhibit 17 to appellant's amended designation of record on appeal.

Theress Smith to be paid in full.  Moreover, the child support

obligations Theress Smith sought to enforce in domestic relations

court related to a child who had been long emancipated from her.

In fact, the child had not lived with Theress Smith for over two

years.[8]  The bankruptcy court concluded, therefore, that full

relief from the automatic stay was not warranted under the

circumstances.

Third, Theress Smith argued that Willie Smith's Chapter 13

plan should not be confirmed, because all of his disposable income

was not being utilized to discharge his debts.  The bankruptcy

court disagreed, concluding that the Chapter 13 plan, as amended,

"provide[d] that all of the debtor's projected disposable income to

be received in the three-year period beginning on the date that the

first payment is due under the plan will be applied to make

payments under the plan."  11 U.S.C. § 1325(b)(1)(B).[9]  As

confirmed, Willie Smith's Chapter 13 plan provides that he will pay

$291.00 biweekly to the trustee over a period of sixty months.

Fixed monthly payments of $250.00 to Theress Smith for back child

support and $224.00 to the Birmingham Police Credit Union for an

---

[8] *See* Debtor's response to request for relief from stay, attached as Exhibit 6 to appellant's amended designation of record on appeal, at ¶ 2.

[9] The term "disposable income" is defined as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor ...."  11 U.S.C. § 1325(b)(2)(A).

automobile loan payment comprise part of Willie Smith's obligations under the Chapter 13 plan. Should Willie Smith become delinquent in his payments under the Chapter 13 plan, any creditor may request the bankruptcy court to dismiss Willie Smith's petition and plan based on default. In the event such default occurs, the bankruptcy court further ordered that Willie Smith would be prohibited from filing another Chapter 13 bankruptcy petition for a period of 180 days.[10]

## IV. DISCUSSION

Theress Smith appeals the decision of the bankruptcy court on the three grounds discussed above, *i.e.*, that Willie Smith's petition for Chapter 13 bankruptcy should not be entertained since he did not file for bankruptcy in good faith; that she should have been granted full relief from the automatic stay by showing sufficient "cause" for doing so; and, that the Chapter 13 plan should not be confirmed since all of Willie Smith's disposable income is not being utilized for the purpose of discharging his debts. The court addresses these issues in turn.

## A.   Was Willie Smith's Petition Filed in Good Faith?

Theress Smith contends the bankruptcy court should not have

---

[10] *See* Order entered on May 13, 1999, in *In re Willie Louis Smith, Jr.*, Case No. 98-6516-TBB-13 (Bankr. N.D. Ala.), attached as Exhibit 16 to appellant's amended designation of record on appeal.

entertained Willie Smith's bankruptcy petition, and necessarily his Chapter 13 plan for discharge of debts, because the petition was not filed in good faith.   "A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard." *In re Saylors*, 869 F.2d 1434, 1438 (11th Cir. 1989) (citations omitted).

The term "good faith" is not defined in the Bankruptcy Code. The Eleventh Circuit has observed, however, that analysis of the "good faith" requirement should focus on "'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [Chapter 13] in the [proposed plan].'" *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983) (quoting 9 *Collier on Bankruptcy* ¶ 9.20, at 319 (14th ed. 1978)). In another case, the Eleventh Circuit made the following statements relating to the factual inquiry into good faith:

> Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose.   Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives.   If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied.
>
> Unmistakable manifestations of bad faith need not be

> based upon a finding of actual fraud, requiring proof of
> malice, scienter or an intent to defraud.  We simply
> require that the bankruptcy courts preserve the integrity
> of the bankruptcy process by refusing to condone its
> abuse.

*In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986).  A number of factors should be taken into account in assessing whether a plan has been proposed by a debtor in good faith:

1.   the amount of the debtor's income from all sources;

2.   the living expenses of the debtor and his dependents;

3.   the amount of attorney's fees;

4.   the probable or expected duration of the debtor's Chapter 13 plan;

5.   the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6.   the debtor's degree of effort;

7.   the debtor's ability to earn and the likelihood of fluctuation in his earnings;

8.   special circumstances such as inordinate medical expenses;

9.   the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessor;

10.  the circumstances under which the debtor has contracted his debts and his demonstrated *bona fides*, or lack of same, in dealing with his creditors;

11.  the burden which the plan's administration would

11

place upon the trustee;

12. the extent to which claims are modified and the extent of preferential treatment among classes of creditors;

13. substantiality of repayment to the unsecured creditors;

14. consideration of the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;

15. the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and

16. other factors or exceptional circumstances.

*Id.* at 888-89. *See also In re Green*, 214 B.R. 503, 506 n.9 (Bankr. N.D. Ala. 1997) (noting that a motion to dismiss a petition for bankruptcy should be analyzed "'by the same standard for determining good faith at confirmation under § 1325(a)(3)'") (quoting *In re Bucco*, 205 B.R. 323, 324 (Bankr. M.D. Fla. 1996)).

In *Brown v. Davis*, 172 B.R. 696 (Bankr. S.D. Ga. 1993), the bankruptcy court analyzed whether a former spouse's allegations that the debtor spouse filed for bankruptcy solely to circumvent the requirements of a divorce decree constituted a lack of good faith, which would result in revocation of confirmation of the Chapter 13 plan. *Id.* at 699 (noting that "in ascertaining good faith, the bankruptcy court may look for manifestations of bad

12

faith, such as filing the petition for an improper purpose"). The former spouse referenced the Eleventh Circuit's decision in *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992), to substantiate his claim of a lack of good faith by the debtor spouse.[11] *See Brown*, 172 B.R. at 699-700. The bankruptcy court found the *Carver* decision inapplicable under the circumstances:

> Moreover, contrary to Mr. Brown's reading of *Carver*, the concerns outlined in *Carver* regarding federal abstention do not necessarily render a debtor's proposed plan nonconfirmable under 11 U.S.C. § 1325(a)(3) just because a divorce decree is the source of much of the debt provided for in the plan; the content and effect of the divorce decree could conceivably bar such a debtor from obtaining a discharge of a particular debt, but it does not prevent the debtor from proposing a Chapter 13 plan in "good faith."
>
> . . .
>
> As her present income is insufficient to pay her debts, without bankruptcy, debtor faces the same financial ruin as any other individual whose debt, for whatever reason, exceeds ability to pay. Chapter 13 is designed to provide individual debtors in financial distress with a way to rehabilitate themselves through meaningful repayment of their debts consistent with their available resources. This debtor is no exception. That the subject debts are her sole responsibility as the result of a divorce decree does not preclude her from proposing a Chapter 13 plan in good faith.

---

[11] In *Carver*, the Eleventh Circuit cautioned bankruptcy courts against interfering with "situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court." *Carver*, 954 F.2d at 1578. A fuller discussion of the *Carver* decision is located *infra* at Section IV.B.

*Id.* at 700-01 (citations omitted) (concluding that debtor's petition satisfies the good faith requirement under 11 U.S.C. § 1325(a)(3)). *Compare In re Green*, 214 B.R. at 507-09 (finding bad faith where debtor had filed for bankruptcy on seven separate occasions since his divorce, and made no real effort to discharge debts, including back child support obligations).

Despite the fact that Willie Smith's initial petition and plan for discharge included only Theress Smith and her attorney, this court cannot conclude, in light of the entire record here, that his filing for bankruptcy was not made in good faith.   The record developed by the bankruptcy court indicates that Willie Smith lacked the ability to timely pay his debts to all of his creditors, including Theress Smith.   Given the conditions imposed by the domestic relations court in rendering judgment against him, the proximity of Willie Smith's filing for bankruptcy is understandable.[12]   In sum, this court concludes that the bankruptcy court's implicit finding that Willie Smith's motivations in seeking relief under the provisions of Chapter 13 were sincere is not clearly erroneous.   *See In re Bates*, 243 B.R. 466, 471 n.8 (Bankr. N.D. Ala. 1999) (noting that the Eleventh Circuit has implied "that

---

[12] *See supra* pages 2-4.

the satisfaction of only one [*Kitchens*] factor was sufficient for a bankruptcy court to find good faith").

**B.     Should the Bankruptcy Court Have Lifted the Automatic Stay?**

In *Carver*, the Eleventh Circuit took a liberal view of the "cause" exception to the automatic stay rule.

> When requested, such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court.  Moreover, "it would result in great injustice to require children to await a bankruptcy court's confirmation of a debtor's Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments."   Such considerations clearly constitute "cause" for which relief from stay may be granted under § 362(d)(1).

*Carver*, 954 F.2d at 1578 (citations omitted).

The facts in *Carver*, however, are different than those before this court.  There, a former spouse commenced a contempt action, for the purpose of enforcing alimony and child support obligations,[13] against the debtor spouse <u>after</u> he had filed for bankruptcy.  The former spouse was not listed as a creditor of the bankruptcy estate, "nor was she listed on the list of creditors who would normally receive notices from the Bankruptcy Court."  *Id.* at

---

[13] As part of the divorce decree, the debtor spouse was obligated to pay the mortgage, taxes, and insurance on the marital home until the former couple's youngest child reached the age of 18.  At the time of the former spouse's contempt action, the mortgage was $6,600 in arrears, and the mortgage company had commenced foreclosure proceedings.  *See Carver*, 954 F.2d at 1574-75.

1574-75.  After being found in contempt and spending more than a
week in jail, the debtor spouse was released when his current wife
paid off his remaining support obligations to the former spouse.

The debtor spouse then commenced an action in bankruptcy court
against the former spouse for "damages occasioned by the willful
violation of the automatic stay provisions of 11 U.S.C. § 362."
*Id.* at 1576.  The bankruptcy court found on behalf of the debtor
spouse, and the district court affirmed.   The Eleventh Circuit
reversed, holding that the bankruptcy court should have abstained
from considering the debtor spouse's claim.  *See id.* at 1578
(noting that "'[t]he reasons for federal abstention in these cases
are apparent: the strong state interest in domestic relations
matters, the competence of state courts in settling family
disputes, the possibility of incompatible federal and state court
decrees in cases of continuing judicial supervision by the state,
and the problem of congested dockets in federal courts'") (quoting
*Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978)).  The *Carver*
court summarized its position in the following statement:

> In our opinion, bankruptcy and district courts should
> tread very carefully when asked to impose sanctions for
> violation of the automatic stay where the actions
> underlying the violation involve alimony, maintenance, or
> support.  In each case, the court should sift through the
> facts, keeping in mind the purposes of the automatic stay

16

>       provision as well as concerns of justice, comity, and
>       judicial economy that support abstention in domestic
>       relations cases.  Where the purposes of the automatic
>       stay provision would clearly be served by affording a
>       remedy for its violation, and the court would not be
>       required to delve too deeply into family law, the court
>       need not abstain from hearing the claim.

*Carver*, 954 F.2d at 1579-80.

A subsequent decision by the United States Bankruptcy Court

for the Southern District of Georgia, which contained facts nearly

identical to the action before this court, distinguished *Carver* in

denying a motion for relief from the automatic stay for cause.  *See*

*In re Fullwood*, 171 B.R. 424 (Bankr. S.D. Ga. 1994).  In *Fullwood*,

a former spouse sought permission from the bankruptcy court to

pursue a contempt action arising out of a domestic relations

judgment.  *See id.* at 424 (debtor spouse noted on bankruptcy

petition that he owed former spouse $400.00 for child support and

former spouse's attorney $1,875.00 in fees).  At a hearing on the

motion, the debtor spouse verified that he would provide for full

repayment of the former spouse in his Chapter 13 plan.  Based on

those facts, the bankruptcy court concluded that adherence to the

Eleventh Circuit's statement in *Carver* that "relief should be

liberally granted [from an automatic stay] in situations involving

alimony, maintenance, or support" was not warranted under all

circumstances:

> The express language of the opinions relied upon by
> the Eleventh Circuit in *Carver* acknowledge that the
> domestic relations exception is not all encompassing.
> Exceptions exist when the court is not asked to inquire
> into the "marital or parent-child relationship." The
> *Carver* opinion noted this fact when it stated that
> bankruptcy courts need not abstain when the resolution of
> the issue does not involve delving too deeply into family
> law. Therefore, although the *Carver* court's
> interpretation of the domestic relations exception is
> very broad, important exceptions remain.

*Fullwood*, 171 B.R. at 427 (citations omitted).

The *Fullwood* court further observed that the Supreme Court's

decision in *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206,

119 L.Ed.2d 468 (1992), limited the domestic relations exception

discussed by the Eleventh Circuit in *Carver*. In *Ankenbrandt*, the

Supreme Court reasoned that "the domestic relations exception ...

divests the federal courts of power to issue divorce, alimony, and

child custody decrees." *Ankenbrandt*, 504 U.S. at 703, 112 S.Ct. at

2215 (further noting that federal court abstention should only

occur in rare circumstances"). *See also Lawson v. Lackey*, 148 B.R.

626, 630 (Bankr. N.D. Ala. 1992) (noting that "[b]ecause *Carver*

hinges upon the finding that domestic relations law is a special

category and an exception to federal jurisdiction, it has been

effectively overruled or substantially limited by *Ankenbrandt*").

In light of the facts and foregoing case law, the *Fullwood* court reasoned that excepting the former spouse from the automatic stay was not appropriate:

> The matter before this Court concerns an arrearage in Debtor's child support payments.  At the time of the hearing on this matter Debtor was current on post-petition child support payments.  Movant [former spouse] seeks to have Debtor held in contempt in state court for nonpayment of pre-petition child support obligations.  Movant is scheduled as a creditor in Debtor's plan, and Debtor proposes to pay 100% of Movant's claim over the course of the Chapter 13 plan.
>
> . . .
>
> The debt at issue here is an acknowledged prepetition default in child support payments.  Such debt is plainly nondischargeable.  11 U.S.C. § 1328(a)(2).  However, such debt may be included in Debtor's Chapter 13 plan.  *James v. Moore* (*Matter of James*), 150 B.R. 479, 485 (Bankr. M.D. Ga. 1993) ("A debtor in a Chapter 13 case must be able to deal with the arrearages on support obligations that are nondischargeable.  It would be virtually impossible to propose a successful Chapter 13 plan that does not provide for payment in full of such obligations.") ... Neither abstention nor relief from stay appear to be appropriate at this time.

*Fullwood*, 171 B.R. at 427-28.  *Accord Lawson*, 148 B.R. at 631 ("[T]he Bankruptcy Code requires that this Court balance the interests of the family, the debtor, and the creditors.").

For the reasons advanced by the *Fullwood* court, this court concludes the bankruptcy court properly held that Theress Smith has failed to establish "cause" justifying relief from the automatic

stay.[14]  Regardless of the effect of the Supreme Court's statements in *Ankenbrandt* on the Eleventh Circuit's statements in *Carver*, this court concludes it will not unduly interfere with state law domestic relations issues by keeping the automatic stay in effect. The points made by the bankruptcy court in initially denying Theress Smith's request for relief are well-taken.  Willie Smith's Chapter 13 plan provides for Theress Smith to be paid in full. Moreover, the child support payments owed by Willie Smith to Theress Smith involve a child who has long reached the age of majority.  That child has not lived with appellant for over two years.  Finally, given the bankruptcy court's warning regarding

---

[14]  The lone remaining exception relevant to this action concerns "the collection of alimony, maintenance, or support from property that is not the property of the estate."  11 U.S.C. § 362(b)(2)(B).  In *Carver*, the Eleventh Circuit observed that the "collection of alimony, maintenance, or support" exception to the requirement of an automatic stay is very narrow:

> Therefore, although the Bankruptcy Code does provide an exception from the automatic stay for the collection of alimony, maintenance, or support, that exception is very narrow—*i.e.*, collection efforts may only be made against property that is not property of the estate.  Generally that will include property and earnings acquired by the debtor after filing for bankruptcy protection.  <u>However, when a debtor files under Chapter 13, the bankruptcy estate includes property and wages gained after commencement of bankruptcy proceedings.  Under this statutory scheme, the exception in 11 U.S.C. § 362(b)(2) has little or no practical effect in Chapter 13 situations</u>.

*Carver*, 954 F.2d at 1577 (emphasis supplied).  Based on this authority, it is clear that Theress Smith cannot seek full-scale relief under 11 U.S.C. § 362(b)(2)(B) from the automatic stay related to Willie Smith's filing of a Chapter 13 bankruptcy petition.  Rather, the bankruptcy court correctly observed that Theress Smith's lone recourse under that exception was to investigate whether Willie Smith had received any tax refunds, as that "is not the property of the estate."

default by Willie Smith, this court concludes that Theress Smith's monetary interest is adequately protected with the automatic stay in full effect.

**C.    Should the Bankruptcy Court have Confirmed the Chapter 13 Plan?**

Upon review of the record, this court concludes that the bankruptcy court properly confirmed Willie Smith's Chapter 13 plan. The findings of fact made by the bankruptcy court relating to allocation of Willie Smith's disposable income among his various creditors are not clearly erroneous.

### V. CONCLUSION

For the foregoing reasons, this court concludes that the decisions of the United States Bankruptcy Court for the Northern District of Alabama, which confirmed appellee's Chapter 13 bankruptcy plan and denied appellant's request for relief from the automatic stay created pursuant to 11 U.S.C. § 362(a), are due to be affirmed.   An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this *28*ᵗʰ day of April, 2000.

_____
United States District Judge